IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| GRUPO RAYCO C.A., | : | |
| | : | |
| | : | |
| Plaintiff/Counter-Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| DELTA AIR LINES, INC., | : | CIVIL ACTION NO. |
| | : | 1:20-cv-01952-AT |
| | : | |
| Defendant/Counter-Claimant. | : | |

## ORDER

This matter, transferred to this Court from the United States District Court for the District of New Jersey, is before the Court on Plaintiff/Counter-Defendant Grupo Rayco C.A.'s Motion to Vacate Default and permit Grupo to file an Answer to Defendant/Counter-Claimant Delta Air Lines Inc.'s Counterclaim [Doc. 48] and Defendant Delta Air Lines Inc.'s Motion to Dismiss for Failure to Prosecute [Doc. 63]. For the reasons set forth below, the Court **DENIES** both motions.

## I.    Factual Allegations

Grupo Rayco, C.A., a travel agency licensed, registered and incorporated in Venezuela, filed this action against Delta Air Lines seeking damages for breach of contract resulting from suspended airline tickets purchased by Grupo Rayco on behalf of its customers. Group Rayco's Complaint alleges that it purchased 60 airline tickets for use on Delta Air Lines through the International Air Transport

Association (IATA)'s Billing and Settlement Plan (BSP).  (Compl. ¶ 4.)  After the tickets were booked and paid in full, Grupo Rayco alleges that Delta wrongfully and without notice or explanation unilaterally changed the status of forty-one of those tickets from "open" to "suspended" in the reservation and ticketing system. (*Id.* ¶ 5.)  When the President of Grupo Rayco inquired as to the change in status of the tickets, he was advised the tickets were no longer usable.  (*Id.*)  The Complaint asserts that Delta's actions, in suspending the airline tickets for which it received payment in full, constituted a breach of its contract with Grupo Rayco as implemented through IATA's BSP. (*Id.* ¶ 6.)  As a result of the suspension of the tickets, Grupo Rayco alleges it was required to provide alternative transportation for the customers booked using the suspended tickets at considerable cost and effort.  (*Id.* ¶ 6.)  Grupo Rayco alleges that Delta refused to issue a full refund for the tickets.  (*Id.* ¶ 8.)

Delta Air Lines filed a Counterclaim against Grupo Rayco on June 3, 2020. (*See* Doc. 39.)  According to the Counterclaim, this dispute arises out of the Passenger Sales Agency Agreement ("PSAA"), a contract between the International Air Transport Association (IATA) on behalf of IATA member airlines/carriers and various accredited travel agencies seeking to sell passenger air transportation on behalf of the air carriers.[1]  (Counterclaim ¶ 5.)  The PSAA provides that "all services sold [by an Agent] pursuant to this Agreement shall be sold on behalf of the Carrier

---

[1] Delta alleges, on information and belief, that the IATA terminated Grupo Rayco's membership in the IATA in November 2018 for non-payment of outstanding debts and cancelled Grupo Rayco's PSAA.  (Counterclaim ¶ 6, n.1.)

and in compliance with Carrier's tariffs, conditions of carriage and the written instructions of the Carrier as provided to the Agent." (*Id.* ¶ 8.)

One of the written instructions provided to Grupo Rayco was Delta's Inventory Circumvention Policy, which provides, in part, that:

> Delta manages inventory on an origin and destination (O&D) basis. Classes of service which may be available on a multi segment O&D may, at the same time, be unavailable if requested as a local segment O&D. Delta's booking policy prohibits the creation of reservations with the intent to circumvent inventory management controls and/or to obtain inventory for ticket sales which Delta does not intend to offer for the passenger's actual O&D itinerary.
>
> For example, if a passenger desires to travel from JFK to TLV, agents must request availability only from JFK to TLV. Agents may not request NRT to TLV in order to obtain access to inventory which Delta has chosen not to make available for local travel from JFK to TLV.

(*Id.* ¶ 11.) Another written instruction Delta provided to Grupo Rayco was Delta's GDS Booking Policy, which states:

> Inventory that is available on a particular segment for one O&D may not be available for other O&Ds including the same segment. Delta's booking policy prohibits the creation of reservations with the intent to circumvent inventory management controls (e.g., married [segment] logic or journey controls) and/or to obtain inventory for ticket sales which Delta does not intend to offer for the passenger's actual O&D itinerary. Agents engaging in circumvention of Delta . . . inventory controls will be held accountable for these violations.

(*Id.* ¶ 12.) Delta has also incorporated a Contract of Carriage into each passenger ticket that prohibits ticketing practices intended to circumvent the published fare that Delta intends to offer for the passenger's true itinerary. The Contract of Carriage provides that:

> Tickets may not be issued at fare(s) published to and/or from a more

distant point(s) than the points being traveled, even when issuance of
such tickets may produce a lower fare.

The Contract of Carriage also expressly prohibits "Hidden City/Point Beyond
Ticketing," which is defined as "[t]he purchase or usage of a fare from a point
before the passenger's actual origin or to a point beyond the passenger's actual
destination" in order to access a more favorable rate. (*Id.* ¶ 13.) Delta has also
implemented fare rules that restrict the issuance and use of tickets under various
Fare Basis Codes. Among other guidelines, Delta's fare rules provide that, for
tickets sold under Fare Basis Codes Y or Y9, the "TICKETS MAY NOT BE SOLD IN
VENEZUELA." (*Id.* ¶ 14.) Section 15.2 of the PSAA provides that the Agent (Grupo
Rayco) "waives any and all claims and causes of action" against the Airline for any
loss, injury or damage arising in connection with the Agreement and will
indemnify hold harmless the Carrier "from and against liability for any loss, injury,
or damage" arising from any negligence or breach of the Agreement by the Agent.
(*Id.* ¶¶ 15-16.)

Delta alleges that the 41 airline tickets at issue violated Delta's Inventory
Circumvention Policy, GDS Booking Policy, and/or the provision of Delta's
Contract of Carriage regarding Circumvention of Published Fares. (*Id.* ¶¶ 17-20.)
According to the Counterclaim, the Grupo Rayco tickets consisted of a total of 203
individual flight segments dispersed across multiple Carriers. (*Id.* ¶ 18; *see* Ex. A
to Counterclaim).  Only the final segment of each Ticket's itinerary included a Delta
flight. Every Delta Segment was a one-way flight departing from Tocumen

International Airport (PTY) in Panama and arriving at Hartsfield-Jackson Atlanta International Airport (ATL) in Atlanta, Georgia, despite the fact that none of the itineraries originated or otherwise included stops in Atlanta, Georgia. (Counterclaim ¶ 18.)  Delta alleges that the majority of the Delta Segments were scheduled for a date one to three months *after* the initial flight segments, and not one of the Delta segments was flown by a ticketed passenger, thereby raising an inference that none of the Delta Segments were ever intended to be flown.  (*Id.* ¶ 19.)

Delta also alleges Grupo Rayco purchased the tickets using a fraudulent currency manipulation scheme.  (*Id.* ¶¶ 21-27.)  The Delta Segments of the Tickets were sold under Fare Basis Codes Y or Y9, which provide that the Tickets could not be sold in Venezuela. (*Id.* ¶ 21.)  Delta's Counterclaim contends that Grupo Rayco sold the Tickets in Venezuela to circumvent this geographic restriction by channeling the purchases of the Tickets through another Agent located in the Republic of Bulgaria. (*Id.* ¶ 21.)

Delta alleges that at or around the time the Tickets were issued, Venezuela's then-official currency, bolívar fuerte (VEF), was marred in a prolonged period of hyperinflation; a "black-market" exchange rate existed that was higher than the official Venezuelan government exchange rate. (*Id.* ¶ 22.)  According to the Counterclaim, Grupo Rayco's customers initially paid Grupo Rayco for the Tickets (to the extent such payments were made at all) using foreign currency. (*Id.* ¶ 23.)  Having issued the tickets in Venezuela, Delta alleges that Grupo Rayco exchanged

the foreign currency (if any) paid by Grupo Rayco's customers for VEF at the black-market rate and then, in turn, paid Delta for the Tickets in VEF at the lower government exchange rate, thereby pocketing the difference. (*Id.* ¶ 24.)  Delta alleges it was unable to convert the VEF to United States currency due to exchange controls instituted by the Venezuelan government in or around 2014. (*Id.* ¶ 25.) Because the majority of flights Grupo Rayco sold on Delta's behalf were on Carriers other than Delta, Delta was required to remit payment to the Carriers for the full value of the portions of the Tickets sold on the Carriers' respective airlines using USD rather than VEF.  (*Id.* ¶ 26.)

The Counterclaim asserts that Grupo Rayco undertook this currency manipulation scheme with the intention of paying Delta in VEF but seeking a refund from Delta for all unflown Delta Segments in United States dollars. According to Delta, Grupo Rayco demanded that Delta refund of all Grupo Rayco's payments for the Delta Segments in USD at the hyperinflated government exchange rate in existence at the time of the initial purchases, alleging that Delta would be acting in "bad faith" if it were to return the payments in the same currency in which they were received (the VEF).  (*Id.* ¶ 27.)

Delta's Counterclaim asserts claims for breach of contract, fraudulent misrepresentation, indemnification, and attorney's fees.

## II.   Procedural Background

Grupo Rayco filed its Complaint against Delta in the United States District Court for the District of New Jersey.  On Delta's motion to dismiss for lack of

jurisdiction and improper venue, the district judge declined to dismiss the action and transferred it to this Court on May 6, 2020.  After the case was transferred, Delta filed its Answer and Counterclaim on June 3, 2020.  Having received no Answer or other responsive pleading, Delta filed a Notice of Default as to its Counterclaim on July 6, 2020.  The Clerk entered default as to Grupo Rayco on the Counterclaim on July 7, 2020.  The next day, Grupo Rayco filed its Motion to Vacate Default along with a proposed Answer.  (Doc. 48.)

## III.   Plaintiff's Motion to Set Aside Default on Counterclaim

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the clerk of the district court must enter a "default" when a party against whom relief is sought fails to "plead or otherwise defend" the claim. Rule 55(c) in turn provides that a "court may set aside an entry of default for good cause." This means that a court may set aside an entry of default "if the defaulting party can provide a good reason for the district court to do so." *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999). Although defaults are disfavored because of the strong policy of deciding cases on their merits, *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003), absent a good reason to do so, setting aside an entry of default is unwarranted. *African Methodist*, 185 F.3d at 1202.

The determination of whether good cause exists under Rule 55(c) is within this court's discretion. *See Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) ("'Good cause' is a mutable standard, varying from situation to situation. It is also a liberal

one . . . [and] is not susceptible to a precise formula[.]"); *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337-38 (11th Cir. 2014) (same). While "good cause" is "not susceptible to a precise formula," courts commonly consider (1) whether the default was culpable or willful, (2) whether setting it aside would prejudice the opposing party, (3) whether the defaulting party presents a meritorious defense, (4) a good reason existed for failing to reply to the complaint, and (5) whether the defaulting party acted promptly to correct its default. *Perez*, 774 F.3d at 1337, n.7; *Compania Interamericana Exp.-Imp., S.A. v. Compania Dominicana de Aviacion*, 88 F.3d at 951-52.

A "technical error or a slight mistake" by a party's attorney should not deprive the party of an opportunity to present the merits of his claim. *Florida Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993). But, if a "party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Compania Interamericana,* 88 F.3d at 951-52. Moreover, when "a litigant has been given ample opportunity to comply with court orders but fails to effect any compliance, the result may be deemed willful." *Id.* at 952.

In determining whether a party might assert a meritorious defense to the action on which it has defaulted, the party has a higher burden once default has been entered than if it filed a timely answer. *In re Durango Georgia Paper Co.*, 314 B.R. 881, 884 (Bankr. S.D. Ga. 2004) (citing *Cielinski v. Kitchen* (*In re Tires and Terms of Columbus, Inc.*), 262 B.R. 885, 889 (Bankr. M.D. Ga. 2000) (Laney,

J.) (citing *Rogers v. Allied Media, Inc.* (*In re Rogers*), 160 B.R. 249, 254 (Bankr. N.D. Ga. 1993))).  Whether a party has asserted a meritorious defense is a critical issue because without a meritorious defense a defendant cannot win at trial.  *In re Gibbs*, 617 B.R. 736, 743 (Bankr. N.D. Ga. 2020), *reconsideration denied*, 19-54809, 2020 WL 2146487 (Bankr. N.D. Ga. May 5, 2020); *see also Arif Merch. v. Ali* (*In re Ali*), Nos. 15-61641-PWB, 17-05230-PWB, 2018 WL 3603021 (Bankr. N.D. Ga. July 25, 2018) (finding the debtor's meritorious defense the most important factor in deciding whether to set aside the entry of default).  There is no point in opening the default if a defendant cannot demonstrate the possibility of his winning. *In re Durango Georgia Paper Co.*, 314 B.R. at 884 (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Thus "a party must demonstrate a defense that probably would have been successful." *Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Systems, Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986).  He cannot satisfy this burden by asserting general denials and conclusory statements. *Id.; Valdez v. Feltman* (*In re Worldwide Web Systems, Inc.*), 328 F.3d 1291, 1295 (11th Cir. 2003).  Instead, the moving party must make an affirmative showing of a defense that is likely to be successful.  *Valdez v. Feltman* (*In re Worldwide Web Systems, Inc.*), 328 F.3d 1291, 1295 (11th Cir. 2003); *S.E.C. v. Simmons*, 241 F. App'x 660, 662 (11th Cir. 2007). Defendant must allege some evidence of a factual basis for a meritorious defense before the Court can seriously consider opening the default. *See Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.*, 33 B.R. 996, 1002 (N.D. Ga.

1983) *aff'd* 742 F.2d 1465 (11th Cir. 1984) (denying motion to set aside entry of default where none of proposed defenses appeared meritorious); *In re Durango Georgia Paper Co.*, 314 B.R. at 884. That means, the party must allege a defense that is legally cognizable and offer specific facts which, if proved at trial, would establish the defense. 10 James Wm. Moore et al., Moore's Federal Practice ¶ 55.70(2)(d) (3d ed.2015); *see also Gibbs v. Air Canada*, 810 F.2d 1529, 1538 (11th Cir. 1987) (explaining that the meritorious defense must be established by a clear and definite recitation of facts); *Wortham v. Brown*, No. CV 214–105, 2015 WL 2152826, at *3 (S.D.Ga. May 7, 2015) ("It is well settled that general denials and conclusive statements are insufficient to establish a meritorious defense; the movant must present a factual basis for its claim."); *In re Arrow Air*, 2012 WL 314192, at *4 (holding that in order to make a sufficient showing of a meritorious defense, the defendant must present evidence of facts that, if proven at trial would constitute a complete defense); *Old Republic Nat'l Title Ins. Co. v. S. Lakeland Airport*, No. 8:10–CV–2613–T–33AEP, 2011 WL 3475355, at *3 (M.D.Fla. Aug. 9, 2011) (concluding that the defendant did not establish a meritorious defense where the defendant merely presented conclusory statements unsupported by plausible allegations of fact).

### A.   Willfulness of the Default

While Counsel's certification attached to the Motion implies that the default was not willful, Grupo Rayco does not present any facts tending to show that its failure to timely respond to the Counterclaim was not reckless disregard for the

judicial proceedings.  *See S.E.C. v. Johnson*, 436 F. App'x 939, 945 (11th Cir. 2011);
*Compania Interamericana Export–Import*, 88 F.3d at 951–52.

Counsel for Grupo Rayco explains the reasons for his failure to timely file an
Answer or other responsive pleading to Delta's Counterclaim in a Certification.
According to Mr. Scordo, he did not timely comply because: (1) this case was
involuntarily transferred to this Court from the New Jersey District Court; (2) he
was required to seek admission *pro hac vice* and find a sponsor in this Court; (3)
he had difficulty reaching his client to review the allegations of the Counterclaim;
and (4) twelve days elapsed after "electronic service" before he was admitted. (*See*
Certification of Counsel, Doc. 48-2 at 1.)

 Grupo Rayco filed suit against Delta in the New Jersey District Court on
February 19, 2019.  On May 6, 2020, on Delta's motion, the case was transferred
to this Court.  Delta requested and received an extension of time to file its Answer
to the Complaint, to allow new counsel to assess the case, and to prepare Rule 26
disclosures and written discovery requests.  In its motion, Delta indicated that
Grupo Rayco did not oppose Delta's request.   Delta filed its Answer and
Counterclaim on June 3, 2020.  Grupo Rayco's response to the Counterclaim was
therefore due by June 24, 2020.  Mr. Scordo did not submit his Application for
Admission *Pro Hac Vice* until June 10, 2020, over one month after the case was
transferred.  The Court approved his application on June 15, 2020, nine (9) days
before the deadline for filing an Answer to Delta's Counterclaim.

Mr. Scordo's contention that "twelve days elapsed after 'electronic service' before he was admitted" is a mischaracterization of the chain of events.  He waited seven days after receiving the Counterclaim (on June 3) before submitting his Application for Admission (on June 10).  Mr. Scordo was admitted five days later on June 15.  He provides no other explanation for his failure to timely file the Answer other than a vague representation that he had difficulty reaching his client to review the allegations of the Counterclaim.  Mr. Scordo's certification does not include any specific information to allow the Court to determine whether he acted diligently in attempting to file a timely Answer.  For example, his certification does not address when he first contacted his client, how many times he contacted his client, why he was unable to reach his client, or the client's whereabouts.  Nor does Mr. Scordo explain why, unlike counsel for Delta, under the circumstances he did not request an extension of the deadline to file the Answer.  Instead, he waited until default was entered against his client to file a proposed Answer in conjunction with his Motion to Vacate Default, apparently assuming that Delta would agree to consensually vacate the default.

Even an allegedly unintentional delay could still be "willful" if it constituted a "reckless disregard for the judicial proceedings." *Compania*, 88 F.3d at 951-952. Grupo Rayco and Mr. Scordo knew the action had been transferred to this Court and that local counsel would have to be obtained.  Mr. Scordo knew that Delta had filed a Counterclaim and that there was an impending deadline for filing an Answer.  Rather than requesting an extension, he sat on his hands risking default.

Moreover, this is not the first instance of Grupo Rayco's failure to comply with the Court's deadlines and Orders (nor was it the last).  For example, On June 10, 2020, the Court entered an Order extending the time for the parties to exchange their Initial Disclosures to June 29, 2020.  Grupo Rayco ignored this deadline for eight months and only filed its Initial Disclosures on March 1, 2021, after Delta recently filed a Motion to Dismiss this action due to Grupo Rayco's failure to prosecute (discussed in detail below).  In addition, after its local counsel moved to withdraw, the Court ordered Grupo Rayco to obtain replacement counsel by October 29, 2020.  Grupo Rayco failed to comply, and on November 4, 2020, the Court ordered Mr. Scordo to show cause by November 10th why the case should not be dismissed pursuant to Local Rule 41.3A(2) for failure to comply with the Court's order.  Again, Grupo Rayco failed to comply and was ordered to have local counsel file a notice of appearance by November 24, 2020.  The day after the Court's deadline, counsel filed his notice of appearance on November 25, 2020.  At no point did Mr. Scordo ever request an extension of time to file initial disclosures or an extension of time to obtain replacement counsel.  Again, he sat on his hands and let the Court's deadlines pass.  And most recently, Grupo Rayco failed to timely respond to Delta's Motion to Dismiss for failure to prosecute.

Thus, it appears to this Court that Grupo Rayco, at a minimum, has exhibited a pattern of reckless disregard for court rules, court orders, and deadlines. *Insituform Techs., Inc. v. AMerik Supplies, Inc.*,  588 F. Supp. 2d 1349, 1358–59 (N.D. Ga. 2008) (concluding that default was willful or culpable where defaulting

defendant was aware of the pendency of the lawsuit, but made a conscious decision to do nothing in response to complaint and attempted instead to negotiate a settlement); *cf. EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 529 (11th Cir. 1990) (concluding that defaulting party offered no meaningful justification for engaging in the dilatory conduct which caused the default where counsel argued that default occurred because defaulting defendant was engaged in other litigation which consumed the attention of upper management and caused confusion); *Davila v. Alcami Grp., Inc.*, No. 12–23168–CIV, 2013 WL 1934168, at *5 (S.D. Fla. May 9, 2013) (holding that defendant's reliance on a belief that settlement negotiations were ongoing was not sufficient excuse for failing to answer the suit). Because reckless disregard for the judicial proceedings is present, the court need make no other findings in denying relief from default. *S.E.C. v. Johnson*, 436 F. App'x 939, 945 (11th Cir. 2011); *Compania Interamericana Export–Import*, 88 F.3d at 951–52.

## B.   Whether Grupo Rayco Acted Promptly to Correct the Default

Grupo Rayco filed its Motion to Vacate Default one day after the Clerk entered default against it and thus acted promptly. However, promptness in response alone is not enough to set aside a default as the defendant must make a further showing of good cause to excuse its failure to timely answer the complaint. *Matter of Rogers*, 160 B.R. 249, 253 (N.D. Ga. 1993).

### C.     Grupo Rayco has Failed to Offer a Meritorious Defense

Grupo Rayco does not allege a meritorious defense.  It's proposed answer contains only general denials, and does not plead a single defense.  Rather, Grupo Rayco offers the following arguments in its Reply in support of its Motion to Set Aside the default:

> Here, Delta claims there was some sort of fraudulent scheme in the issuance of the airline tickets for which plaintiff seeks reimbursement here. However, Delta does not dispute that the tickets in question were paid for in full and it was Delta that unilaterally suspended them. Delta also baselessly allege that some sort of currency manipulation occurred here, a serious allegation for sure, without any attempt at all to show that plaintiff's principal has some Svengali-like control over the international monetary system. Curiously, Delta does not claim that the exchange rate used was not that approved by IATA (International Air Transport Association, the [sic] as well as the nation where the tickets were issued, Venezuela. Plaintiff objects to having to provide an affidavit of meritorious defense where judgment has not been entered and the allegations are as spurious as here in this setting where only a hint of suggestion of a meritorious defense is required. This is not a summary judgment motion nor even an application for demurrer.

(Reply, Doc. 51 at 4.)[2]  The only claim Grupo Rayco specifically addresses is Delta's fraud claim.  It offers nothing in response to Delta's claims for breach of contract or indemnification.  Grupo Rayco's assertion that "Delta does not dispute that the tickets in question were paid for in full and it was Delta that unilaterally suspended them," is not a defense to Delta's Counterclaim which asserts the tickets were purchased in violation of several provisions of the Passenger Sales Agency Agreement and with a form of currency barred under the Agreement.

---

[2] The arguments offered in Reply should have been submitted with Grupo Rayco's opening brief in support of its motion as it is the movant's burden to demonstrate good cause to set aside default.

Accordingly, the Court finds that Grupo Rayco has failed to offer anything to affirmatively and specifically show that there was a valid defense that would likely be successful. Grupo Rayco has merely filed a proposed answer to Delta's Counterclaim that contains general denials of Delta's allegations (including several that contradict Grupo Rayco's allegations in its own complaint) which is not enough to show a meritorious defense. *See Solaroll*, 803 F.2d at 1133 (holding that defaulting party cannot satisfy the burden of showing a meritorious defense simply by "asserting a general denial"); *In re Worldwide Web Systems, Inc.*, 328 F.3d at 1295; *S.E.C. v. Simmons*, 241 F. App'x. at 662.

### D.    Prejudice to Delta

Vacating the entry of default would prejudice Delta. This is because where it is clear there is no meritorious defense, the delay in vindicating the plaintiff's rights amounts to an undue prejudice. *Turner Broad. Sys.*, 33 B.R. at 1003 (citing *Rasmussen v. W.E. Hutton & Co.*, 68 F.R.D. 231, 235 (N.D. Ga. 1975)). Moreover, the expense incurred in prosecuting a suit in which the defendant has defaulted and presented no meritorious defense also unduly prejudices the plaintiff. *Turner Broad. Sys.*, 33 B.R. at 1003.

Based on the totality of the circumstances presented here, the Court concludes that Grupo Rayco has failed to establish good cause for setting aside the default. Accordingly, for the reasons stated, the Court **DENIES** Plaintiff/Counter-Defendant Grupo Rayco C.A.'s Motion to Vacate Default [Doc. 48].

## IV.    Delta's Motion to Dismiss for Failure to Prosecute

Delta has moved to dismiss Grupo Rayco's Complaint pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 41.3(A)(3) as a result of Grupo Rayco's failure to prosecute its claims and its continued disregard for the Court's orders and deadlines.  According to Delta, in the nine months that this case has been pending before this Court, Grupo Rayco has taken no discovery, failed to respond to Delta's written discovery requests, ignored multiple court-ordered deadlines, and failed to timely reply to Delta's Counterclaim, thereby placing itself into default.  Grupo Rayco's pattern of delay and willful contempt of court orders, Delta asserts, justifies dismissal.

A district court is authorized Fed. R. Civ. P. 41(b) to dismiss an action for failure to prosecute or to obey a court order or federal rule. The Local Rules of this Court provide that the Court may dismiss a civil case for failure to prosecute if the case "has been pending in this court for more than six (6) months without any substantial proceedings of record, as shown by the record docket or other manner, having been taken in the case." LR 41.3A(3), NDGa.  The court's power to dismiss is an inherent aspect of its authority to enforce its orders and insure prompt disposition of lawsuits. *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985); *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983) (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630–31 (1962)).  The decision to dismiss for want of prosecution lies within the district court's discretion. *McKelvey v. AT & T Techs.,*

*Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986) (citing *Martin-Trigona v. Morris*, 627 F.2d 680, 682 (5th Cir. 1980)).

The legal standard to be applied under Rule 41(b) is whether there is a "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." *Id.* (quoting *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980)).  Dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances.  *Goforth*, 766 F.2d at 1535; *Jones*, 709 F.2d at 1458.  A finding of such extreme circumstances necessary to support the sanction of dismissal must, at a minimum, be based on evidence of willful delay; simple negligence does not warrant dismissal. *McKelvey*, 789 F.2d at 1520; *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *E.E.O.C. v. Troy State University*, 693 F.2d 1353, 1354, 1357 (11th Cir. 1982), *cert. denied*, 463 U.S. 1207 (1983).

Delta has accurately described the course of this litigation in its motion and reply. Since this case was transferred to this Court in May 2020, Plaintiff's counsel has engaged in a pattern of delay and what could be viewed as deliberate refusal to comply with the directions of the Court.

Other than moving to vacate its default as to Delta's Counterclaim over six months ago, the docket does not reflect any effort by Grupo Rayco to prosecute its claims against Delta or otherwise participate in the litigation.  It was only after Delta filed its Motion to Dismiss for Lack of Prosecution in February, 2021 that Grupo Rayco filed its Initial Disclosures (and not until March 1, 2021, eight months

after the court-ordered deadline).  (*See* Doc. 43, ordering parties to file their Initial Disclosures on or before June 29, 2020.)  Grupo Rayco has also failed to respond to Delta's written interrogatories, requests for admission, and requests for production of documents which were served in July 2020.  (*See* Doc. 54; See also, Doc. 63-2, Ex. A to Mot. to Dismiss, Meadows Decl.) Nor did Grupo Rayco respond to either of Delta's August 24, 2020 or September 4, 2020 email communications regarding Grupo Rayco's outstanding discovery obligations.  (*See* Doc. 63-2, Meadows Decl. ¶¶ 5, 7, 13.)  Notably, Grupo Rayco has not served any written discovery requests of its own or sought to take any depositions during the pendency of this case. (*Id.* ¶ 14.)

Additionally, Grupo Rayco has failed to comply with several court orders requiring it to have local counsel appear in the litigation. On September 29, 2020, after its local counsel filed a motion to withdraw, the Court ordered Grupo Rayco to retain replacement local counsel on or before October 29, 2020. (*See* Docket Entry, Sept. 29, 2020.) Grupo Rayco failed to comply with the Court's Order to have local counsel file an appearance by the deadline. Therefore, on November 4, 2020, the Court issued an Order directing Grupo Rayco to show cause in writing why the case should not be dismissed pursuant to Local Rule 41.3 for failure to comply with the Court's prior order directing Grupo Rayco to have local counsel appear. (Order, Doc. 59.)  The Court provided Grupo Rayco through November 14, 2020 to respond. (*Id.*)  Again, Grupo Rayco failed to comply by the deadline. Instead, four days later (and without moving for an extension of time) counsel for

Grupo Rayco contacted chambers via telephone and advised that Grupo Rayco had retained local counsel. (*See* Dkt Entry, Nov. 18, 2020.) The Court ordered Grupo Rayco to have local counsel file a Notice of Appearance by November 24, 2020. (*Id.*) Although Grupo Rayco's local counsel ultimately filed a notice of appearance on November 25, 2020, it was once again after the court-ordered deadline (and without any explanation for the delay).

In the three months since Grupo Rayco's local counsel filed his appearance, Grupo Rayco took no action in this case until Delta filed the pending Motion to Dismiss.  Grupo Rayco's response to Delta's Motion to Dismiss for Failure to Prosecute was due on February 23, 2021.  Surprisingly, *or not*, Grupo Rayco failed to timely respond to the motion, filing its opposition brief four days late on February 27, 2021.  Nor has Grupo Rayco made any attempts to communicate with Delta or to otherwise move its case forward during this time.  (Meadows Decl. ¶ 15.)

Grupo Rayco has not *proactively* litigated its substantive claims against Delta since filing its Complaint in this matter over a year ago on February 19, 2020. Rather, Grupo Rayco's only conduct in the litigation has been *reactive*.  Prior to the motion to dismiss, it's only substantive filings in this Court were made on July 8, 2020 (Motion to Vacate Entry of Default) and July 24, 2020 (Reply in Support of Motion to Vacate Entry of Default), and were filed in direct response to the Court's entry of default against Grupo Rayco on Delta's Counterclaim.  And as Delta points out, these filings were made more than six months ago, relate only to

Delta's Counterclaim, and have no bearing on whether Grupo Rayco has diligently pursued its own claims in this case.

Grupo Rayco's response to Delta's Motion to Dismiss is quite extraordinary. Grupo Rayco does not deny that it failed to timely file its Initial Disclosures by the court-ordered deadline, that it has never respond to Delta's outstanding discovery requests served eight months ago, that it has not conducted discovery on its own claims, or that it has otherwise taken no action to prosecute its claims against Delta in this case.  Instead, Grupo Rayco characterizes this as a discovery dispute and accuses Delta of failing to comply with the procedures of Fed. R. Civ. P. 37 to resolve the dispute without court action:

> Here, defendant has filed no motion to compel, never followed up on 6-month old emails and now seeks to use Rule 41 as an end run around the court's discovery procedures. Furthermore, this court's Standing Order requires that no discovery motion shall be filed without court permission. So rather than file a motion to compel, or even follow up on a six-month-old email defendant, filed this motion to dismiss. It must be denied.

(Resp., Doc. 64 at 2-3.)  Along with its very cursory and belated response brief, Grupo Rayco's counsel, Anthony Scordo, filed a Certification stating, "I did not contemporaneously read the emails sent by Ms. Peurach on either August 24, 2020 or September 4, 2020 and only now have retrieved those from my 'junk' folder. Ms. Peurach never followed up with a call to myself or local counsel in the intervening 6 months."  (Doc. 64-1.)  According to Delta, "Mr. Scordo's 'certification'[3] only

---

[3] Delta points out that Mr. Scordo's "certification" is unsworn and does not meet the standards of 28 U.S. Code § 1746, which governs unsworn declarations. By omitting the requisite language stating that the certification was made "under penalty of perjury," counsel has failed to

underscores Grupo Rayco's systematic lack of attention to this case." (Reply, doc. 67 at 6.)  The Court agrees.  Rather than step up and take responsibility for its own lack of diligence and repeated non-compliance with deadlines and court orders, Grupo Rayco instead attempts to shift the blame to Delta for Grupo Rayco's own negligence.  Grupo Rayco's blame-game is not well received and indicates to the Court that Grupo Rayco's counsel does not take his obligations to this Court and opposing counsel seriously.

Delta argues that it is "unlikely that any lesser sanctions would have the intended effect of deterring future misconduct or compelling Grupo Rayco to participate in this litigation where Grupo Rayco has already missed numerous litigation deadlines and ignored this Court's unambiguous orders – including, most notably, this Court's show-cause Order, despite the Court's clear admonition that 'failure to respond to this order will result in dismissal of this action.'" (Doc. 59.)

Despite Plaintiff's persistent course of misconduct, dismissal is a sanction of last resort and should be imposed only where lesser sanctions would not suffice to cure the misconduct.  The Court finds that lesser sanctions are warranted before

---

substantially comply with the statute. *See, e.g., In re World Trade Ctr. Disaster Site Litig*., 722 F.3d 483, 488 (2d Cir. 2013) ("The substitution of 'subject to punishment' for 'under penalty of perjury' is a substantial departure from the substance of the declaration provided in § 1746, and thus, does not comply with the statute."); *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (holding that omission of the phrase "under penalty of perjury" would "allow[ ] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods.").

the case is dismissed with prejudice. Accordingly, the Court **DENIES** Delta's Motion to Dismiss for Failure to Prosecute [Doc. 63].

To date, Plaintiff has failed to take responsibility for its dilatory conduct or acknowledge its apathetic efforts in prosecuting this case. Plaintiff is on notice that such conduct will not be further tolerated by the Court. Contrary to Grupo Rayco's contention that there has been no 26(f) conference here to date setting forth a discovery schedule, a detailed Pretrial Scheduling Order was entered in this case nearly one year ago on April 15, 2020 (a few weeks before transfer to this Court). (Doc. 25.) The Scheduling Order set several case related deadlines, including a deadline for fact discovery of April 15, 2021, production of affirmative expert reports by January 1, 2021, production of responsive expert reports by March 1, 2021, and a deadline for expert depositions of April 15, 2021.[4] (*See id.*) The Court will not extend the discovery deadlines previously imposed. The Court **WARNS** Plaintiff that its failure to timely comply with any further deadlines or Court orders **WILL RESULT IN THE DISMISSAL WITH PREJUDICE** of this action.

## V.  Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff/Counter-Defendant Grupo Rayco C.A.'s Motion to Vacate Default [Doc. 48] as to Delta Air Lines Inc.'s

---

[4] Under the Local Rules of this Court, the deadline for filing motions for summary judgment is 30 days after the close of discovery and the deadline for filing a proposed consolidated pretrial order is 30 days after the close of discovery, or entry of an order on any pending motions for summary judgment. *See* LR 16.4, NDGa.; LR 56.1D, NDGa.

Counterclaim and **DENIES** Defendant Delta Air Lines Inc.'s Motion to Dismiss for Failure to Prosecute [Doc. 63].

Finally, the Court **ORDERS** the parties to attend mediation to be conducted by a magistrate judge of this Court.  The Clerk is **DIRECTED** to refer this action to the next available magistrate judge for the purpose of conducting the mediation. The mediation shall be scheduled after discovery ends on April 15, 2021 and shall be concluded by June 1, 2021, unless otherwise extended by the assigned magistrate judge.  The parties are **DIRECTED** to file a status report with the Court regarding the outcome of the mediation by June 4, 2021.  The deadline for the parties to file motions for summary judgment, or alternatively the consolidated pretrial order **SHALL BE STAYED** pending the mediation.  If the case is not resolved through mediation, the parties **SHALL** file motions for summary judgment, or alternatively the consolidated pretrial order within 30 days of the conclusion of the mediation.

**IT IS SO ORDERED** this 16th day of March, 2021.

**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**