## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GRUPO RAYCO C.A.,

               Plaintiff,

    v.

DELTA AIR LINES, INC.,

               Defendant.

Civil Action No.: 1:20-cv-01952-AT

## DEFENDANT DELTA AIR LINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Alexandra S. Peurach
Christopher J. Kelleher
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street N.E., Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7974
alex.peurach@alston.com
chris.kelleher@alston.com

*Attorneys for Defendant Delta Air Lines, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS ....................................................................................2

   A.  Grupo Rayco Is a Venezuelan Travel Agency that Operates From an
      Apartment Building in Randolph, New Jersey.................................................2

   B.  Delta and Grupo Rayco Were Parties to the Passenger Sales Agency
      Agreement & Incorporated Agreements. .......................................................3

   C.  Grupo Rayco Sells 41 Airline Tickets on Delta's Behalf and Pays Delta
      in Venezuelan Currency. ...............................................................................6

   D.  Grupo Rayco's Failure to Keep Records Substantiating Its Highly
      Questionable Ticketing Practices. ..................................................................9

   E.  Richard and Janis Yoon Confirm that Grupo Rayco's Ticketing
      Practices Were Fraudulent.............................................................................10

ARGUMENT AND CITATION OF AUTHORITY ............................................11

I.   Legal Standard...............................................................................................11

II.  Delta Is Entitled to Summary Judgment on Its Counterclaims Against
     Grupo Rayco for Breach of Contract and Indemnification.............................12

   A.  Grupo Rayco's Illegitimate Ticketing Practices Breached the Parties'
      Agreements. ...................................................................................................12

   B.  Delta Is Entitled to Indemnification for Grupo Rayco's Breaches of the
      Parties' Agreements.......................................................................................18

CONCLUSION ....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AcryliCon USA, LLC v. Silikal GmbH,*
985 F.3d 1350 (11th Cir. 2021) ..........................................................................17

*Am. Univ. of the Caribbean v. Caritas Healthcare,*
484 F. App'x 322 (11th Cir. 2012) ....................................................................17

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ............................................................................................11

*Botterbusch v. Preussag Int'l Steel Corp.,*
271 Ga. App. 190 (2004) ....................................................................................17

*Brooks v. Branch Banking & Tr. Co.,*
107 F. Supp. 3d 1290 (N.D. Ga. 2015) ..............................................................13

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ......................................................................................11, 12

*Cozzi v. Owens Corning Fiber Glass Corp.,*
63 N.J. Super. 117 (App. Div. 1960) ..................................................................18

*Dougherty v. Drew Univ.,*
534 F. Supp. 3d 363 (D.N.J. 2021) ....................................................................13

*Ferguson v. Atlanta Indep. Sch. Sys.,*
2009 WL 10671359 (N.D. Ga. Feb. 23, 2009) ....................................................4

*Hickson Corp. v. N. Crossarm Co., Inc.,*
357 F.3d 1256 (11th Cir. 2004) .........................................................................11

*Jeffery v. Sarasota White Sox, Inc.,*
64 F.3d 590 (11th Cir. 1995) ..............................................................................12

*N. Am. Specialty Ins. Co. v. Cardinal Contracting Co., LLC,*
2022 U.S. Dist. LEXIS 115410 (D.N.J. June 29, 2022) ....................................19

**RULES**

Fed. R. Civ. P. 36(a)(3) ..........................................................................................4

Fed. R. Civ. P. 36(b) ....................................................................................................4

## INTRODUCTION

This is a case in which the Plaintiff/Counterclaim Defendant Grupo Rayco C.A. ("Grupo Rayco")—a Venezuelan travel agency operating out of a residential apartment complex in Randolph, New Jersey—initially sued Delta Air Lines, Inc. ("Delta") over 41 airline tickets that Grupo Rayco allegedly sold on Delta's behalf. Oddly, Grupo Rayco remitted payment to Delta for those tickets in Venezuela's then-existing and hyper-inflated currency, the bolívar fuerte (VEF), yet later—and well after the allegedly intended travel and after the International Air Transport Association ("IATA") warned Grupo Rayco about losing its ticketing authority— sought refunds for those tickets in U.S. dollars. But as this Court found when it dispensed with Grupo Rayco's breach of contract claim against Delta, Delta had no obligation to issue a refund in U.S. dollars when it was paid with a now-worthless VEF.

Grupo Rayco's audacity did not stop at currency arbitrage. Its scheme was orchestrated through fraud. Specifically, it created fraudulent passenger itineraries that contained identical one-way Delta flights from Panama City, Panama to Atlanta, Georgia, even though the passengers never intended to take those flights (and, it turns out, never even knew about them). Those bogus itineraries violated several of Delta's fare and inventory restrictions, and Grupo Rayco has not produced one shred of evidence to controvert that inescapable conclusion. Delta is therefore entitled to

summary judgment on its breach of contract claim and, because of Grupo Rayco's misconduct, Delta is also entitled to summary judgment on its declaratory judgment claim for indemnification from Grupo Rayco.[1]

## STATEMENT OF FACTS

### A.   Grupo Rayco Is a Venezuelan Travel Agency that Operates From an Apartment Building in Randolph, New Jersey.

Grupo Rayco was a travel agency licensed and registered in Caracas, Venezuela, *see* Complaint (Dkt. 1) ("Compl."), ¶ 1, yet for the last several years, Grupo Rayco has maintained its principal place of business in a residential apartment complex in Randolph, New Jersey. *See* Deposition of Tzvetan E. Nikolov ("Nikolov Dep.") at 17:22-18:6.[2] An individual named Tzvetan Nikolov ("Mr. Nikolov") is the sole owner and manager of Grupo Rayco. *Id*. at 19:24.

Mr. Nikolov acquired Grupo Rayco from its previous owners in early 2018, just months before this dispute arose. *Id*. at 11:14-17, 44:14-20. Mr. Nikolov did not travel to Venezuela to close his purchase of Grupo Rayco, *id*. at 13:12-14:25, and the only evidence of Mr. Nikolov's ownership of Grupo Rayco produced in this

---

[1] To the extent this Court grants Delta summary judgment on its counterclaims for breach of contract and indemnification, Delta respectfully submits that it currently intends to nonsuit its remaining claims against Grupo Rayco, thereby allowing this case to proceed to a final judgment without the necessity of a trial on Delta's counterclaims for fraud and attorneys' fees.

[2] A true and correct copy of the relevant excerpts from Mr. Nikolov's deposition is attached as Exhibit A.

litigation consists of two documents written in Spanish, a language Mr. Nikolov admits he "barely understand[s]," *id*. at 9:1-25. Mr. Nikolov could neither read nor translate the documents at his deposition, and he admitted that he was not present when the documents were created or signed. *Id*. at 42:20-56:23. He also could not recall the amount he supposedly paid to acquire Grupo Rayco. *Id*. at 15:17-17:5.

Mr. Nikolov testified that Grupo Rayco has two employees in Venezuela, though he could not recall one of their names. *Id*. at 23:17-24:5. He was also "not quite sure" whether those two employees have access to email in performing their jobs and, despite the fact that his Spanish is "very, very bad," he claims to communicate with his employees only via Skype or other instant messaging systems. *Id*. at 94:23-95:6, 96:7-15. Other than this lawsuit, Grupo Rayco has no other ongoing business operations as a travel agency. *Id*. at 22:19-23:3.

### B. Delta and Grupo Rayco Were Parties to the Passenger Sales Agency Agreement & Incorporated Agreements.

Through approximately November 2018, Grupo Rayco was accredited as a travel agency by IATA. S*ee* Declaration of Alexandra Peurach ("Peurach Decl."), Ex. 1 ¶ 29.[3] IATA is a trade association formed by its member airlines to, among other things, coordinate the booking of air travel by travel agencies and the payment

---

[3] A true and correct copy of the Declaration of Alexandra Peurach is attached as Exhibit B.

process for such bookings. *See* Declaration of Dawn Love ("Love Decl."), ¶ 3.[4] Travel agencies accredited by IATA enter into a Passenger Sales Agency Agreement ("PSAA") that is binding on both the travel agencies and member airlines. *Id.*, ¶ 9; *see also* Delta's First Requests for Admission ("RFA"), ¶¶ 1-3.[5] The PSAA allows travel agencies to sell and issue IATA member airlines' air transportation tickets to the agencies' customers. Love Decl., ¶ 9. Delta is an IATA member airline. *Id.*, ¶ 3.

The PSAA expressly incorporates several additional documents into the contract, including "the Sales Agency Rules, the Billing and Settlement Plan rules, . . . [and] other applicable IATA Resolutions." PSAA, §§ 2.1(a)(i)-(iv). [6] The PSAA also requires that "all services sold pursuant to this Agreement shall be sold on behalf of the Carrier and in compliance with Carrier's tariffs, conditions of carriage, and the written instructions of the Carrier as provided to the Agent." *Id.*, § 3.2. Grupo Rayco acknowledges that it received, had access to, and/or was aware of Delta's written instructions and policies, which include Delta's International General Rules

---

[4] A true and correct copy of the Declaration of Dawn Love is attached as Exhibit C.

[5] Grupo Rayco failed to timely respond to the RFA. *See* Peurach Decl., ¶¶ 2-5. As this Court previously held (Dkt. 111), all facts contained in the RFA are deemed admitted and therefore are "conclusively established" for purposes of Delta's Motion. *See also* Fed. R. Civ. P. 36(a)(3), 36(b); *Ferguson v. Atlanta Indep. Sch. Sys.*, 2009 WL 10671359, at *3 (N.D. Ga. Feb. 23, 2009). A true and correct copy of the RFA is attached to the Declaration of Alexandra Peurach as Exhibit 1.

[6] A true and correct copy of the PSAA is attached to the RFAs. *See* Ex. B at 13-16.

Tariff (the "Contract of Carriage") and Delta's Agent Code of Conduct. RFA, ¶¶ 1-2, 4-10.

Delta's Contract of Carriage prohibits the issuance of tickets "to and/or from a more distant point(s) than the points being traveled, even when issuance of such tickets may produce a lower fare." Contract of Carriage § 15(A).[7] It also prohibits ticketing practices intended to circumvent Delta's published fares, including by prohibiting "[t]he purchase or usage of a fare from a point before the passenger's actual origin or to a point beyond the passenger's actual destination," as well as duplicate, impossible, or fictitious bookings. *Id*., §§ 15(C)(3), (E). Delta's Inventory Circumvention Policy and GDS Booking Policy both also prohibit Grupo Rayco from creating reservations to obtain inventory that would not otherwise be available through Delta for a passenger's true origin and destination (O&D) itinerary. Love Decl., ¶¶ 7-8.

In addition, Delta provided Grupo Rayco with various tariffs and other rules and restrictions governing ticket sales and related issues. RFA, ¶ 4. In 2018, Delta's fare rules provided that tickets sold under Fare Basis Codes Y or Y9 "MAY NOT BE SOLD IN VENEZUELA." *Id*., ¶ 14 (emphasis added). Delta's prohibition of sales of certain tickets in Venezuela predates 2018, and was put in place in response

---

[7] A true and correct copy of the Contract of Carriage is attached to Delta's RFAs. *See* Ex. B at 18-52.

to hyperinflation of Venezuela's VEF and related restrictions imposed by the Venezuelan government that made it all but impossible for Delta to exchange VEF for U.S. dollars ("USD"). *See* Deposition of Tim DeLaney ("DeLaney Dep.") at 13:23-14:12.[8] For largely that reason, as well as other geopolitical concerns, Delta has not operated in Venezuela since September 2017. *Id.* at 14:23-15:1.

### C.  Grupo Rayco Sells 41 Airline Tickets on Delta's Behalf and Pays Delta in Venezuelan Currency.

In April and May of 2018, shortly after Mr. Nikolov is alleged to have purchased the travel agency, Grupo Rayco sold and issued approximately 60 multi-segment airline tickets to its customers on Delta's behalf and remitted payment to Delta via the BSP. Love Decl., ¶¶ 13, 17; RFA, ¶ 24. At the time Grupo Rayco issued the tickets, various interline agreements between Delta and other airlines permitted Grupo Rayco to sell flights on *other* airlines on a Delta ticket, provided that at least one flight segment on every ticket was on a Delta-operated flight. Love Decl., ¶ 4. Delta was then responsible for remitting payment to the other carriers for the segments of the tickets those carriers operated. *Id.*

Of the approximately 60 tickets issued by Grupo Rayco, 41 are relevant to the present dispute (hereinafter, the "Tickets"). *Id.*, ¶¶ 13, 15. Those Tickets consisted of a total of 203 individual flight segments dispersed across multiple airlines. *Id.*

---

[8] A true and correct copy of the relevant excerpts of the Deposition of Tim DeLaney is attached as Exhibit D.

Only one flight segment on each Ticket was on Delta—an identical one-way flight departing from Panama City, Panama (PTY), and arriving in Atlanta, Georgia (ATL). *Id.* Notably, none of the passengers' itineraries originated or otherwise included stops in Atlanta, and the vast majority of the Delta segments were scheduled to be flown on a date one to three months *after* the initial (and predominantly round-trip) flight segments on each respective itinerary. *See* Dkt. 8-3; Love Decl., ¶ 14 & Ex. 4. Each Ticket also had at least one segment noted as "ARNK," which meant "arrival unknown" and indicated that there was an unexplained gap between a passenger's arrival in one city and that same passenger's subsequent departure from another city. Nikolov Dep. at 202:11-204:3; Dkt. 8-3. On each ticket, the "unknown" segment showed the passenger inexplicably appearing in Latin America from an unknown point of departure and with no corresponding flight before supposedly planning to board a one-way Delta flight from Panama to Atlanta. *See* Dkt. 8-3.[9]

Although Grupo Rayco received payment from its customers in a currency *other than* VEF—and, curiously, has absolutely no records reflecting such payments—Grupo Rayco paid Delta for the Tickets in VEF via the BSP in

---

[9] Some of the Tickets included an additional flight segment immediately preceding the Panama-to-Atlanta segment: a one-way flight from Caracas, Venezuela (CCS) to Panama, typically scheduled for one day before (or the day of) and immediately preceding the Panama-to-Atlanta flight. *See* Dkt. 8-3. Like the Delta segment, none of the Caracas-to-Panama flights were flown, either. *See* Love Decl., Ex. 4.

Venezuela. RFA, ¶¶ 24-25; Nikolov Dep. at 215:3-7, 217:18-24. Due to currency exchange controls instituted by the Venezuelan government, Delta was unable to convert the VEF to USD. Love Decl., ¶ 16. Nevertheless, Delta was required to pay other airlines for the full value of the portions of the Tickets sold on their behalf in USD. *Id*., ¶ 17. In all, Delta remitted payments to these other airlines totaling $113,412.68. *Id*., ¶ 17 & Ex. 4. And shortly afterward, Grupo Rayco sought a refund from Delta for all unflown flights—including all 41 Delta segments—in USD. *See* Dkt. 125 at 6-7.

Although Delta's policy at the time expressly forbade ticket sales and issuance in Venezuela, Grupo Rayco was nevertheless able to issue the Tickets by exploiting a loophole in the BSP system. The loophole existed because Delta did not "turn the BSP indicator off when they should have and, therefore, some sales trickled through with a Caracas code in it." DeLaney Dep. at 23:25-24:4. In essence, although Delta believed that it had taken steps to preclude ticketing in Venezuela, Grupo Rayco and its Bulgarian counterpart found a way to issue the tickets in Venezuela anyway. But as Mr. DeLaney testified, "when you have a situation like that, the seller still maintains the responsibility of knowing what they can and can't do because in the agency agreement that they signed off on they said they understood that they must abide by what the airlines put forth[.]" *Id*. at 24:4-8.

**D.    Grupo Rayco's Failure to Keep Records Substantiating Its Highly Questionable Ticketing Practices.**

For unknown reasons, Grupo Rayco funneled the purchase of the tickets through a Bulgarian travel agency named Mira Travel. RFA, ¶ 22; Nikolov Dep. 82:4-84:7, 93:23-94:7. However, Grupo Rayco has no records whatsoever of any communications with the Bulgarian agency pertaining to the Tickets. Nikolov Dep. at 94:1-22. After coordinating the sale of the Tickets through its Bulgarian intermediary, Grupo Rayco issued the Tickets to its customers in Venezuela. RFA, ¶ 23. It also has no records pertaining to its alleged customers, including as it relates to their booking of and payment for the Tickets. Nikolov Dep. at 72:11-16, 74:1-78:3, 84:8-25, 102:1-108:19, 111:13-112:4. Indeed, despite the highly unorthodox nature of the passengers' itineraries, Mr. Nikolov testified that he made no effort to verify that the passengers actually intended to fly each segment of their respective trips. *Id*. at 204:4-13, 205:4-12, 208:14-209:4, 211:20-214:19.

Today, Grupo Rayco has no records whatsoever of any communications it may have had with the passengers (or anyone else, for that matter) about the booking of the Tickets. *Id*. at 72:11-16, 74:1-78:3, 84:8-25. Nor does it have any records showing who the passengers are, where they live, or how to contact them. *Id*. at 201:7-9. There also are no records of when, how, or how much the passengers paid Grupo Rayco, or that Grupo Rayco ever refunded any portion of the fares to the supposed passengers. *Id*. at 102:1-108:19, 111:13-112:4, 250:2-251:7. Grupo Rayco

also has no records at all relating to its finances, such as a balance sheet, income statement, or even any banking records. *Id*. at 139:4-145:22.

**E.    Richard and Janis Yoon Confirm that Grupo Rayco's Ticketing Practices Were Fraudulent.**

Richard Yoon and his daughter, Janis Yoon, are two of the 41 customers whose airline tickets are at issue in this litigation. *See* Dkt. 8-3 at 7-8. Their travel itineraries each included round-trip flights from Los Angeles to Seoul, South Korea between the dates of May 9, 2018 and May 24, 2018, which were to be flown on Korean Air. *Id*. Their itineraries also inexplicably included a one-way Delta flight from Panama City, Panama to Atlanta, Georgia three months later on August 25, 2018. *Id*.

Mr. Yoon confirmed that he booked the round-trip flights between Los Angeles and Seoul for himself and his daughter in United States dollars using his personal credit card, and that the Yoons traveled on those flights without incident. *See* Declaration of Richard Yoon ("Yoon Decl."), ¶¶ 2-4.[10] Mr. Yoon also revealed that at no time did he seek, request, or authorize the booking of a flight for himself or his daughter to fly from Panama City, Panama to Atlanta, Georgia on Delta Air Lines or any other airline, that he was never informed that any such tickets were

---

[10] A true and correct copy of the Declaration of Richard Yoon is attached as Exhibit E.

booked in his and his daughter's names, and that he never paid for any such tickets. *Id*., ¶ 6.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    Legal Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). And a dispute about a material fact is only considered "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. A movant therefore may "discharge[] its burden on a motion for summary judgment by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case" such that "there are no

genuine issues of material fact that should be decided at trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995). The party opposing summary judgment, on the other hand, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (citation omitted).

## II. Delta Is Entitled to Summary Judgment on Its Counterclaims Against Grupo Rayco for Breach of Contract and Indemnification.

As explained below, there are no material facts in the record that even arguably cast doubt on the conclusion that Grupo Rayco breached the parties' agreements and owes Delta indemnification due to Grupo Rayco's misconduct in its ticketing practices. As a result, Delta is entitled to summary judgment on its counterclaims for breach of contract and indemnification.

### A. Grupo Rayco's Illegitimate Ticketing Practices Breached the Parties' Agreements.

The uncontroverted evidence establishes that Grupo Rayco breached the parties' agreements in several respects through its inclusion of illegitimate flight segments on the Tickets it sold and issued on Delta's behalf. Delta is therefore entitled to summary judgment on its breach of contract counterclaim.

The elements of a breach of contract claim under both Georgia and New Jersey law are familiar: "(1) a valid contract; (2) material breach of its terms; and (3)

damages arising therefrom." *Brooks v. Branch Banking & Tr. Co*., 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015); *see also Dougherty v. Drew Univ*., 534 F. Supp. 3d 363, 383 (D.N.J. 2021) ("A breach of contract claim requires (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages.") (citation omitted).[11] The undisputed facts show that Delta has satisfied each element.

*First*, neither party disputes that at all relevant times they were parties to the PSAA and the ancillary documents and policies incorporated therein—including the Contract of Carriage and Delta's various fare rules and ticketing policies—which were valid and binding contracts. RFA ¶¶ 1-10. And as the Court found when it granted Delta's motion for summary judgment on Grupo Rayco's breach of contract claim, Delta performed the contractual obligations that it may have owed to Grupo Rayco. *See generally* Dkt. 125.

---

[11] The PSAA provides that "this Agreement shall be interpreted and governed in all respects by the law of the principal place of business of the Agent." PSAA, § 17. Grupo Rayco has testified that, at all material times hereto, its principal conducted Grupo Rayco's business operations exclusively from New Jersey. Nikolov Dep. at 17:22-18:6; RFA, ¶ 26. Delta therefore respectfully submits that the portion of its breach claim against Grupo Rayco arising under the PSAA is governed by New Jersey law. However, as this Court has already found, the Contract of Carriage has a separate choice of law provision pointing to the laws of the State of Georgia, and thus "Georgia law will govern the interpretation and application of the Contract of Carriage." *See* Dkt. 125 at 11.

*Second*, it cannot legitimately be disputed that Grupo Rayco's ticketing practices breached the parties' contracts in several respects. As explained above, Section 3.2 of the PSAA requires Grupo Rayco to comply with Delta's tariffs, Contract of Carriage, and written instructions when selling and issuing tickets on Delta's behalf. PSAA, § 3.2. Several provisions of those documents are relevant here, including: (1) Rules 15(A) and 15(C)(3) of the Contract of Carriage, which prohibit ticketing practices that include booking flight segments "to and/or from a more distant point(s) than the points being traveled" and "a point beyond the passenger's actual destination"; (2) Rule 15(E) of the Contact of Carriage, which prohibits duplicate, impossible, or fictitious bookings; (3) Delta's GDS Booking Policy and Inventory Circumvention Policy, both of which prohibit ticketing practices that are intended to obtain inventory that Delta does not intend to offer for the customers' true itineraries; and (4) Delta's then-applicable fare rules, which provided that tickets sold under Fare Basis Codes Y or Y9 "MAY NOT BE SOLD IN VENEZUELA." *See* Delta's Counterclaim (Dkt. 39) ("Countercl.") ¶¶ 10-16, 20, 30; RFA, ¶¶ 1-10.

There is no genuine dispute that Grupo Rayco issued the Tickets in violation of the above-referenced ticketing rules because no rational jury could find, based on the faces of the Tickets themselves, that the itineraries reflect legitimate customer requests. Indeed, even though every one of the Tickets shows Atlanta as the final

destination for all 41 passengers, not a single passenger departed from Atlanta or otherwise flew through its airport. *See* Dkt. 8-3. For many, in fact, the original point of departure was thousands of miles from Atlanta. *Id*. Moreover, the passengers' respective arrivals in Caracas or Panama were preceded by the letters "ARNK" on their itineraries, which stands for "arrival unknown." Nikolov Dep. at 202:11-203:24. But Grupo Rayco has "absolutely no explanation as to how the individual [passenger] got to" either Caracas or Panama in the first place. *Id*. at 203:3-6. On each of the 41 Tickets, the Panama-to-Atlanta segments were also inexplicably scheduled to be flown several months after the customers' other flight segments concluded, lending even further support for the conclusion that those flights were not a part of any legitimate travel itineraries. *See* Dkt. 8-3.

Of course, the fact that *not a single one of the 41 passengers flew the Delta segment* only bolsters the inescapable conclusion that the passengers never intended to fly that segment. *Id*. So too does the fact that Richard Yoon—one of the customers unknowingly implicated by Grupo Racyo's fraudulent ticketing scheme—confirmed that the Panama-to-Atlanta flight segment on his itinerary was, in fact, illegitimate. *See* Yoon Decl., ¶ 6. And far from controverting that evidence, Mr. Nikolov admitted that Grupo Rayco never inquired as to why these passengers would book travel that left them stranded in Atlanta, often thousands of miles from home; he testified it was "not of [his] interest" to ensure the passengers actually intended to fly the routes

Grupo Rayco booked for them. Nikolov Dep. at 203:3-205:12. Mr. Nikolov also testified that Grupo Rayco has no records of *any* communications with *any* one of its 41 customers or their agents showing that the customers requested—or even knew about—the Delta segments. *Id*. at 72:11-16, 74:1-78:3, 84:8-25. And when asked whether he had "any evidence at all that any of these 41 passengers actually intended to end their trips in Atlanta," Mr. Nikolov responded: "No." *Id*. at 214:9-12.[12]

A reasonable jury presented with these undisputed facts could draw but one inference: that Grupo Rayco booked the Delta segments on the Tickets with no intention of such segments ever being flown by its customers. These illegitimate itineraries violated several contractual provisions, including that: (1) they were "fictitious" in violation of Rule 15(E) of the Contract of Carriage; (2) they permitted Grupo Rayco to book tickets through Delta that otherwise would not have been available for the customers' true O&D itineraries because no other flight segments were on Delta and ticketing through Delta therefore would have been prohibited, which is prohibited by Delta's GDS Booking Policy and Inventory Circumvention Policy; and (3) the itineraries were issued "to and/or from a more distant point[] than the points being traveled" and "a point beyond the passenger's actual destination,"

---

[12] Incredibly, when asked why passengers from places like the United States, Canada, and Australia would choose to pay for airline tickets with VEF, Mr. Nikolov suggested that the passengers themselves may have been attempting to engage in foreign currency arbitrage—the same manipulative conduct that Delta alleges in its counterclaim—stating: "I don't see any other reason." Nikolov Dep. at 83:1-84:7.

in violation of Contract of Carriage Rules 15(A) and 15(C)(3).[13] And because there is nothing in the record from which a reasonable jury could infer that the Tickets were legitimate, Delta is entitled to summary judgment on its counterclaim for breach of contract.

Finally, Delta has shown that it was damaged by Grupo Rayco's breaches of the parties' agreements.[14] Among other things, Delta has been damaged by receiving nearly worthless VEF for the Tickets through Grupo Rayco's circumvention of Delta's prohibition of ticket sales in Venezuela and its corresponding exploitation of the BSP loophole while also having to pay the other airline carriers in USD for their segments of the tickets. Love Decl., ¶¶ 16-17. Delta has also incurred significant operational and legal costs to investigate and address Grupo Rayco's fraudulent ticketing scheme, which resulted in additional damages to Delta.[15] *See Am. Univ. of*

---

[13] Grupo Rayco has also admitted that it issued the Tickets in Venezuela in violation of Delta's then-existing policy, and this separate breach of Delta's fare rules therefore stands undisputed. RFA, ¶ 23.

[14] Even if this Court finds that Delta did not suffer any actual damages, Delta would still be entitled to an award of "nominal damages sufficient to cover the costs of bringing the action." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1374 (11th Cir. 2021) (quoting O.C.G.A. § 13-6-6); *see also Botterbusch v. Preussag Int'l Steel Corp.*, 271 Ga. App. 190, 195 (2004) (holding that although plaintiff "suffered no actual damages from the breach of the notice provision," he is nevertheless "entitled to nominal damages relating to such breach" which are "sufficient to cover the costs of bringing the action.").

[15] Should this Court grant summary judgment in Delta's favor, Delta respectfully submits that the Court should convene an evidentiary hearing at which Delta can

*the Caribbean v. Caritas Healthcare*, 484 F. App'x 322, 329 (11th Cir. 2012) (observing that the non-breaching party can recover consequential damages "if, at the time the parties made the contract, the breaching party had a reason to foresee that the claimed damages would probably result.").

In sum, the uncontroverted evidence establishes that Grupo Rayco committed several material breaches of the parties' agreements by booking tickets with illegitimate itineraries that its customers never intended to fly, and Delta is therefore entitled to summary judgment on its breach of contract counterclaim.

**B.    Delta Is Entitled to Indemnification for Grupo Rayco's Breaches of the Parties' Agreements.**

In Count Three of its counterclaim, Delta seeks a declaratory judgment that: (a) Grupo Rayco is contractually obligated to indemnify Delta; (b) Grupo Rayco must reimburse Delta for its costs and expenses; and (c) Grupo Rayco must pay for any liabilities Delta has incurred. Countercl. ¶¶ 41-45; *see also* PSAA, §§ 15.2, 15.3. In New Jersey, "a contract of indemnity is" interpreted under the same "rules governing the construction of contracts generally." *Cozzi v. Owens Corning Fiber Glass Corp.*, 63 N.J. Super. 117, 121 (App. Div. 1960).[16] Accordingly, "[w]here the

---

quantify the attorneys' fees, operational costs, and similar losses to which it is entitled under its claims for breach of contract and indemnification.

[16] Because Grupo Rayco's indemnification obligations arise under the PSAA, the Court should apply New Jersey law to Delta's indemnification claim. *See* PSAA, § 17; *see also supra* n.11.

terms of an indemnity agreement are clear, courts must enforce the plain language of the agreement," and "summary resolution of indemnity disputes with unambiguous contractual provisions is appropriate." *N. Am. Specialty Ins. Co. v. Cardinal Contracting Co., LLC*, 2022 U.S. Dist. LEXIS 115410, at *4-5 (D.N.J. June 29, 2022) (granting summary judgment on indemnification claim and finding that defendants were liable for the indemnitee's losses and expenses pursuant to the "unambiguous language" of indemnification agreement).

The unambiguous language of the PSAA requires Grupo Rayco to indemnify and hold Delta harmless "from and against liability for any loss, injury, or damage" arising from Grupo Rayco's negligence or breach of the PSAA or Grupo Rayco's "negligent or unauthorized use" of the ticketing system through which it sells and issues airlines tickets on Delta's behalf. PSAA, §§ 15.2, 15.3. As explained above, Grupo Rayco's improper ticketing practices and misuse of its ticketing authority breached the PSAA. Delta suffered losses as a direct result of those breaches. Among other things, Grupo Rayco paid Delta nearly worthless VEF for the Tickets, yet Delta had to pay the other airline carriers in USD for their segments of the Tickets, resulting in a $113,412.68 loss. Love Decl., ¶ 16-17 & Ex. 4. Delta has also incurred significant operational and legal costs to investigate Grupo Rayco's fraudulent ticketing scheme, defend against Grupo Rayco's since-defeated breach claim, and

pursue its counterclaims against Grupo Rayco, all of which resulted in additional losses to Delta.[17]

Under the clear and unambiguous terms of the PSAA, Grupo Rayco must indemnify Delta. Delta is therefore entitled to a declaratory judgment that Grupo Rayco is contractually obligated to indemnify Delta for its losses, injuries, and damages resulting from Grupo Rayco's breaches of the PSAA.

## <u>CONCLUSION</u>

For the foregoing reasons, Delta respectfully requests that this Court grant summary judgment to Delta on its counterclaims for breach of contract and indemnification. Delta further requests that the Court convene an evidentiary hearing at which Delta may quantify the attorneys' fees, costs, and related expenses it has incurred.

[Signature on following page]

---

[17] Notably, Grupo Rayco is required to indemnify Delta from *all* losses, injuries and damages, "whether direct, indirect or consequential." PSAA, §§ 15.2, 15.3.

Respectfully submitted, this 21st day of October, 2024.

**ALSTON & BIRD LLP**

/s/ *Alexandra S. Peurach*
Alexandra S. Peurach
GA Bar No. 451333
Christopher J. Kelleher
GA Bar No. 937613
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
(404) 881-7974
alex.peurach@alston.com
chris.kelleher@alston.com

*Counsel for Defendant Delta Air Lines, Inc.*

21

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1C.

<u>/s/ *Alexandra S. Peurach*          </u>
Alexandra S. Peurach
GA Bar No. 451333
alex.peurach @alston.com

*Counsel for Defendant Delta Air Lines, Inc.*

22

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing ***Defendant Delta Air Lines, Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment*** was electronically filed using the Court's CM/ECF system, which will transmit Notices of Electronic Filing to all counsel of record.

This 21st day of October, 2024.

*/s/ Alexandra S. Peurach*
Alexandra S. Peurach
